MALONEY, J.
 

 The plaintiff appeals from the decision of the defendant commissioner of human resources (commissioner), revoking her family day care home registration. The commissioner acted pursuant to General Statutes § 19a-87e (formerly § 17-588) and § 17-31q et seq. of the Regulations of Connecticut State Agencies (repealed September 1, 1993). The plaintiffs appeal is authorized by General Statutes § 4-183. The court finds the issues in favor of the commissioner.
 

 The basis of the commissioner’s action was his determination that the plaintiff had refused to consent to an unannounced home inspection by the department of human resources. The commissioner revoked the plaintiffs registration following a fair hearing conducted by a departmental hearing officer. The plaintiff appeared at the hearing, represented by counsel, and testified. Various other witnesses testified, including the department’s investigator who had attempted to conduct the inspection.
 

 The hearing officer found that, on March 2, 1992, the department investigator went to the plaintiffs home, where she conducted her day care business, for the purpose of conducting a spot inspection. The visit was during customary business hours. The hearing officer found that the plaintiff refused at that time to consent to the inspection; specifically, that the plaintiff refused to consent to the investigator’s entry into the home.
 

 
 *227
 
 The plaintiff advances two arguments as the bases of her appeal. First, she claims that the evidence in the record does not support the hearing officer’s finding that she refused to consent to the inspection. Second, she claims that the applicable statutes and regulations that require a day care provider to consent to unannounced home inspections as a condition of continued licensure are facially unconstitutional.
 

 Sections 17-31q-14 (j) and 17-31q-21 (a), (b) and (e) of the Regulations of Connecticut State Agencies, the applicable regulations when this case arose, provide in relevant part:
 

 “[Sec. 17-31q-14] (j) Consent to home visits
 

 “The provider and substitute shall consent and agree to allow the Commissioner or his authorized representative to have access and inspection privileges of the facility and day care records for the performance of home visits during customary business hours.”
 

 “[Sec. 17-31q-21] (a) Access
 

 “The provider or substitute shall allow the Commissioner or his authorized representative access to the facility named on the registration, whenever the Commissioner or his authorized representative is attempting to perform home visits. If a provider does not consent to departmental access for the performance of a home visit, the Commissioner or his authorized representative will not gain access to the facility. However, failure of the provider to allow access to the facility for a home visit is deemed substantial noncompliance with this regulation and is an automatic ground for the Commissioner to initiate registration suspension or revocation proceedings.
 

 “(b) Inspection of facility
 

 “The provider or substitute shall allow the Commissioner or his designated representative to inspect, upon demand, any part of the family day care facility during
 
 *228
 
 the performance of a home visit. If a provider does not consent to departmental inspection of a part of the day care facility, the Commissioner or his authorized representative will not inspect that part of the facility. However, failure of the provider to allow a complete inspection may be grounds for the initiation of registration suspension or revocation proceedings.
 

 * * *
 

 “(e) Spot inspections
 

 “The Commissioner or his authorized representative shall make unannounced home visits, during customary business hours, to at least thirty-three and one-third (33y3 %) percent of the registered family day care homes each year.”
 

 Evidence in the record in the present case reveals that a representative of the commissioner, departmental investigator Percy Boucher- Williamson, went to the plaintiffs family day care home, which was also the plaintiffs residence, at approximately 10:30 a.m. on March 2, 1992, to perform an unannounced spot visit and inspection. At that point, there is dispute as to what exactly transpired, or at least as to how what transpired should be interpreted. The evidence most favorable to the plaintiff is her own testimony at the administrative hearing: “And [the investigator] said I’m here to do a home visit .... I said . . . why do it? She said we’re mandated by law. So I said to myself, well, I know they’re mandated to do spot inspections, and then I asked her are you saying that you’re here to do a spot inspection? And she said yes, do I have your permission to come in? And I said no. She said are you telling me that I can’t come in? I said no. And she said well, you have to give me permission to come in. And I went to myself I don’t think so.”
 

 At this point, the plaintiff testified, she opened her door and stepped back so as not to block the entrance
 
 *229
 
 physically. Her testimony continued: “I pointed to the threshold and I said, there’s the bright line that the constitution protects, and if you come across my threshold it’s with the power of state law and the power of the regulation, and not by my permission.”
 

 There then ensured some further colloquy between the investigator and the plaintiff, during which the plaintiff said, in effect, the door is open, I cannot stop you from coming in, but you do not have my permission.
 

 The plaintiff claims that this evidence, which was not significantly disputed by the commissioner’s witnesses, does not support the commissioner’s finding that the plaintiff violated the cited regulations requiring a licensee’s consent to unannounced spot inspections. This claim cannot be sustained.
 

 Nothing in the regulations permits a department investigator to enter a facility without the permission of the day care provider. To the contrary, the plain words of subsections (a) and (b) of § 17-31q-21 prohibit an investigator from proceeding in the absence of the provider’s consent. It is equally clear that the plaintiff provider in the present case did not give her consent. The plaintiffs attempt to draw a distinction between “permission” and “consent,” claiming that she withheld the former while giving the latter, is of no avail. There is no distinction between the two terms in the context of the regulations in question.
 

 The open door was of no significance. The plaintiffs express and repeated denial of permission acted as an unbreachable bar to the investigator’s entry to the home. To hold otherwise would be to ignore the plain words of the regulations requiring the investigator to retreat in the absence of permission to enter. These regulations do not allow a day care provider the option
 
 *230
 
 of passive resistance; rather, they require positive acquiescence in the state inspection program, including voluntary consent to unannounced spot inspections.
 

 On the basis of the evidence in the record, summarized earlier, the court holds that the hearing officer’s finding that the plaintiff refused to consent to the required inspection was fully justified.
 

 The plaintiff next mounts a wholesale attack on the constitutionality of the regulations in question. In this regard, she claims that the regulations “violate the fundamental constitutional right to privacy of the plaintiff under Article I, Sections 7, 8 and 10 of the Connecticut constitution, the fourth amendment and are overbroad.”
 

 It is well established that a challenge to a duly enacted statute on the basis that it is unconstitutional carries a heavy burden. Indeed, constitutional flaws must be proved beyond a reasonable doubt.
 
 State
 
 v.
 
 Floyd,
 
 217 Conn. 73, 79, 584 A.2d 1157 (1991). Regulations carry the force of statute and are similarly armored against constitutional challenge.
 
 Griffin Hospital
 
 v.
 
 Commission on Hospitals & Health Care,
 
 200 Conn. 489, 497, 512 A.2d 199, appeal dismissed, 479 U.S. 1023, 107 S. Ct. 781, 93 L. Ed. 2d 819 (1986).
 

 The plaintiff cites no Connecticut appellate authority to support her specific contention that the regulatory scheme for inspecting family home day care centers is unconstitutional. In essence, however, she seems to be claiming that the requirement that she consent to home inspections as a condition of maintaining her license is so coercive that it amounts to warrantless searches of her home. The court disagrees.
 

 As stated by our Supreme Court in
 
 Amsel
 
 v.
 
 Brooks,
 
 141 Conn. 288, 296, 106 A.2d 152, appeal dismissed, 348 U.S. 880, 75 S. Ct. 125, 99 L. Ed. 693 (1954), cited by the defendant, “[n]o one has an inalienable right to
 
 *231
 
 pursue a profession or vocation which requires special knowledge or peculiar skill and is therefore a proper subject for supervision in the interest of the public welfare.” Regulation of business by the police powers of the legislature, however, is subject to the test “whether it serves the public health, safety and morals at all and whether it does so in a reasonable manner. . . . The regulation and prohibition it imposes must have a rational relationship to the preservation and promotion of the public welfare.” Id., 294 — 95.
 

 The regulations in question are designed to provide state officials immediate access to inspect private homes that have been licensed as places where other people’s children are cared for in the absence of their parents. The state argues persuasively that “the tender years of the children, their dependence on the provider, the potential for abuse, and the easy concealment of common dangers found in a private residence” provide a rational basis for the requirement of spot inspections. To this list could be added, of course, the absence of parental supervision, which provides strong support for state supervision.
 

 On the basis of the considerations outlined previously, the court cannot say that the regulations in question do not serve a rational purpose in protecting and preserving the public welfare, especially the welfare of children. The court concludes that the plaintiff has not met her burden of establishing that the regulations are unconstitutional beyond a reasonable doubt.
 

 For all of the aforementioned reasons, the plaintiffs appeal is dismissed.