[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 FACTS
The plaintiff, Linda Elf, appeals from a decision of the State of Connecticut Department of Public Health (DPH), summarily suspending and revoking her license to operate a family day care home.
The decision appealed from was issued on February 3, 1999 by Hearing Officer, Stanley K. Peck, following oral argument on January 26, 1999 (ROR Col. I, pp. 1-4).
The final decision incorporated the findings contained in a proposed memorandum of decision by Hearing Officer, Donna B. Brewer, dated December 16, 1998 (ROR Vol. I, pp. 5-25) CT Page 2799
The memorandum of decision followed a hearing conducted on September 29, 1998 and October 2, 1998.
The hearing concerned both the summary suspension of the plaintiff's license to operate a day care facility issued on August 14, 1998 (ROR Vol. I, pp. 26-27), and revocation of the license (ROR Vol. I, pp. 30-32).
Testimony at the hearing revealed that the Department of Public Health (DPH) received an anonymous complaint on August 6, 1998 concerning the plaintiff's day care facility located at 160 Walnut Tree Hill Road in Newtown.
Two DPH investigators, Sandra Lok and Patricia Galante, conducted an unannounced inspection of the home on August 12, 1998.
The plaintiff holds a license permitting her to care for six children (ROR Vol. I, p. 9).
When the investigators arrived at the home, ten children were present.
It was subsequently determined that two of the children were accompanied by a parent and were not enrolled in the day care program.
The status of another child, Monica, was disputed.
The plaintiff maintained that Monica was not a day care child, but was under the care of her daughter who was babysitting.
At the hearing, witnesses disagreed concerning the actions and activities of Linda Elf during the unannounced inspection.
Hearing Officer, Brewer, found that children were left to "wander about" during the investigation, and that the plaintiff, Linda Elf, became "agitated," thus neglecting the needs of the children in her care.
The plaintiff telephoned the Newtown Police Department and an officer responded.
It was also found that the plaintiff prevented the two investigators from leaving the premises after the police were CT Page 2800 called, a finding vigorously disputed by the plaintiff.
The hearing office further found that the situation at the day care home on August 12, 1998 was "not healthy and nourishing" but was instead "stressful and unsafe."
She also found, based upon the evidence presented, that specific children became upset.
It is admitted that during the August 12, 1998 inspection, the plaintiff objected to certain conduct by Sandra Lok and Patricia Galante.
Officer Steven Ketchum, who testified at the hearing, spoke with both of the DPH investigators and with the plaintiff, Linda Elf.
He took statements as part of his investigation.
Officer Ketchum placed the plaintiff, Linda Elf, under arrest, charging her with disorderly conduct.
The DPH letter of summary suspension, issued two days later (ROR Vol. I, pp. 26-27), cited nine alleged violations of DPH regulations.
The plaintiff had operated a facility at the Walnut Tree Hill Road address for thirteen years.
The letter of summary suspension was quickly followed on September 2, 1998 by a letter proposing the revocation of the plaintiff's day care license, citing twelve reasons (ROR Vol. I, pp. 30-32).
At the hearing, both the plaintiff and the parents of various day care students testified concerning the environment at the plaintiff's home.
The plaintiff contradicted the version of the August 12 visit provided by the investigators, and maintained that the children continued to play throughout the inspection.
She further attributed the rising level of tensions to the demeanor and actions of the two DPH employees, Sandra Lok and Patricia Galante. CT Page 2801
At the plaintiff's request, the hearing conducted before Hearing Officer, Brewer, involved both the summary suspension of her license (ROR Vol. I, p. 28), and the revocation of the day care license (ROR Vol. I, p. 29).
In addition to reviewing the events of the August 12, 1998 visit, the hearing officer's decision found a history of "past practices and . . . prior violations" (ROR Vol. I, p. 23), dating back to 1995.
The prior violations involved "overcapacity" complaints and denial of access to portions of the residence, and to the records.
From the decision of the hearing officer, the plaintiff brings this appeal.
 STANDARD OF REVIEW
Judicial review of the decision of an administrative agency requires a court to determine whether there is substantial evidence in the record to support the finding of the agency. Petv. Department of Health Services, 228 Conn. 651, 667 (1994).
The substantial evidence standard is satisfied if the record provides a substantial basis of fact from which the fact in issue can be reasonably inferred. Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525, 539-41 (1987). The substantial evidence standard is similar to the sufficiency of the evidence standard applied by a trial court when reviewing a jury verdict. Huck v. Inland Wetlands Watercourses Agency, supra, 541.
In determining whether a finding is supported by substantial evidence, a court must defer to the agency's assessment of the credibility of witnesses, and to the agency's right to believe or disbelieve the evidence presented by any witness, in whole or in part. Briggs v. State Employees Retirement Commission,210 Conn. 214, 217 (1989).
The question is not whether the trial court would have reached the same conclusion, but whether the record before the agency supports the action taken. Miko v. Commission on Human Rights Opportunities, 220 Conn. 192, 201 (1991; Williams v. Liquor CT Page 2802 Control Commission, 175 Conn. 409, 414 (1978).
The possibility of drawing two inconsistent conclusions from the evidence, does not prevent an agency's finding from being supported by substantial evidence. Samperi v. Inland WetlandsAgency, 226 Conn. 579, 588 (1993).
 BIAS CLAIM NOT SUPPORTED
The plaintiff claims that the Hearing Officer, Donna Brewer, was biased in that she is an employee of the defendant, Department of Health.
It is also claimed, based upon the findings of fact issued following the hearing, that the hearing officer displayed a bias in favor of the agency and its witnesses.
These claims are not persuasive.
An administrative agency can be both the investigator and the adjudicator of the same matter, without violating due process requirements. New England Rehabilitation Hospital, Inc. v. CHHC,226 Conn. 105, 152 (1993); Petrowski v. Norwich Free Academy,2 Conn. App. 551, 571 (Borden, dissenting) (1984).
There is a presumption that an administrative agency member, acting in an adjudicative capacity, is not biased. Jutkowitz v.Department of Health Services, 220 Conn. 86, 100 (1991).
To overcome this presumption, a party must demonstrate actual bias, rather than mere potential bias, unless the circumstances indicate a probability of such bias too high to be considered tolerable. O G Industries, Inc. v. Planning ZoningCommission, 232 Conn. 419, 429 (1995); Rado v. Board ofEducation, 216 Conn. 541, 556 (1990).
The party seeking disqualification has the burden of proving that the official has, in some measure, adjudged the facts as well as the law of a particular case in advance of hearing it.Clisham v. Board of Police Commissions, 223 Conn. 354, 362, (1992).
The plaintiff has failed to establish bias.
Her attempt to argue that the decision reached after hearing, CT Page 2803 and judgments made by the hearing officer concerning the credibility of witnesses, demonstrates bias, cannot avail her.
Mere disagreement with the results of a hearing is insufficient to show that the hearing examiner exhibited bias.
Furthermore, the plaintiff has not pointed to a single case holding that the combination of investigative and adjudicatory functions within one agency, violates concepts of fundamental fairness and due process of law.
 CONSENT TO INSPECTION IS A LEGITIMATE CONDITION OF MAINTAINING A DAY CARE LICENSE
The plaintiff argues that the regulation which requires her to consent to unannounced inspections as a condition of maintaining her day care license is unconstitutional.
This argument is not well taken.
Consent to inspection as a condition of maintaining a license has survived constitutional challenge. Kagan v. Alander,42 Conn. App. 92 (1996) (Maloney, J.).
There is no inalienable right to pursue a particular profession or vocation requiring special knowledge or peculiar skill. Amselv. Brooks, 141 Conn. 288, 296 (1954).
The challenged regulation represents a legitimate exercise of police powers, given the ages of the children involved, the potential for abuse, and the total dependence of children on the day care provider for extended periods of time. Kagan v. Alander,44 Conn. Sup. 223, 229 (1996).
The plaintiff's feeble attempt to elevate this controversy to one of constitutional dimension, falls far short of the requirement that one challenging the constitutionality of a statute must prove its unconstitutionality beyond a reasonable doubt. Fair Cadillac-Oldsmobile Isuzu Partnership v. Bailey,229 Conn. 312, 316 (1994); Sassone v. Lepore, 226 Conn. 773, 778-79
(1993).
Nor can the plaintiff's misplaced reliance upon the exclusionary rules provide a basis for challenging the decision of the agency. CT Page 2804
There is no basis for excluding any evidence in the purely administrative proceeding, even if the exclusionary rules were somehow to find application.
The plaintiff consented to the unannounced inspection which took place on August 12, 1998.
 THE CREDIBILITY OF WITNESSES IS JUDGED BY THE AGENCY
The plaintiff's remaining arguments involve the failure of the hearing officer to credit her version of events, rather than the version offered by the agency witnesses.
Because questions involving the credibility of witnesses and the weight to be given their testimony are decisions for the agency; Bradley v. Inland Wetlands Agency, 28 Conn. App. 48, 53
(1992); the plaintiff cannot prevail in challenging the decision, when the substantial evidence standard is applied.
The decision of the agency, based upon the record of the hearing, is supported by substantial evidence.
 CONCLUSION
Although the decision of the agency must be sustained, based upon the substantial evidence standard, this should not be read as endorsing the revocation of a day care provider's license based upon violations which are purely technical and involve bookkeeping practices.
With the sole exception of the incident of August 12, 1998, the plaintiff, Linda Elf's record as a day care provider for fifteen years, fails to reveal any conduct which created a danger to children in her care, or fostered an unsafe or dangerous environment.
All of the evidence, particularly that provided by parents using her day care services, indicates that the events of August 12, 1998 were an aberration.
Although the agency's findings have met the substantial evidence test, the record of the hearing also contains powerful and compelling testimony supporting the plaintiff's contention that she is a competent, conscientious, and caring day care CT Page 2805 provider.
At a time when there is a critical need for available, affordable day care services, quality services should not be denied parents based upon technical deficiencies in bookkeeping, or a lapse of judgment on a single occasion.
The fact that the court is compelled to sustain the agency decision, based upon the applicable standard of review, does not mean that the findings of the agency would necessarily prevail if a trial de novo were conducted.
Nor should sustaining the decision of the agency be used to prejudice the plaintiff, should she choose to reapply for a license in the future.
The appeal is dismissed.
Radcliffe, J.