LINDA ELF *v.* DEPARTMENT OF PUBLIC HEALTH
(AC 20874)

Schaller, Flynn and O'Connell, Js.

Argued June 12—officially released October 23, 2001

*Vincent P. McCarthy*, for the appellant (plaintiff).

*Rosemary M. McGovern*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *William M. Brown, Jr.*, and *Richard J. Lynch*, assistant attorneys general, for the appellee (defendant).

*Opinion*

FLYNN, J. The plaintiff, Linda Elf, appeals from the judgment of the trial court affirming the decision by the defendant department of public health (department) revoking her license to operate a family day care home. The plaintiff claims on appeal that the court improperly

upheld the revocation of her license because (1) the department's decision was not based on substantial evidence, (2) the court in reviewing the department's decision applied the wrong standard of review, and (3) the plaintiff was denied due process and natural justice at the revocation proceedings and was subjected to an unconstitutional search of her facility. We affirm the judgment of the trial court.

The department's hearing officer found the following facts. The plaintiff had been a licensed family day care operator for approximately fifteen years, and during the period immediately preceding the revocation of her license, operated a family day care home with a capacity for six children in the basement of her home in the Sandy Hook section of Newtown.[1] On August 12, 1998, department investigators Sandra Lok and Patricia Galante, in response to an August 6, 1998 anonymous complaint alleging overcapacity, made a surprise inspection visit to the plaintiff's facility. The plaintiff signed a consent to inspect form and admitted the inspectors.

Upon entering the facility, the inspectors noted that ten children and three adult women were present. The plaintiff explained that two of the children were not under her care, but were only visiting the center with their mother. Shortly thereafter, those two children left the facility with one of the women. The plaintiff further told the investigators that another of the children was not a day care client, but was being cared for and given

---

[1] General Statutes § 19a-77 (a) (3) provides in relevant part: "A 'family day care home' . . . consists of a private family home caring for not more than six children, including the provider's own children not in school full time . . . . During the regular school year, a maximum of three additional children who are in school full time, including the provider's own children, shall be permitted, except that if the provider has more than three children who are in school full time, all of the provider's children shall be permitted . . . ."

piano lessons by the other woman, who was the plaintiff's daughter, Courtney.

As Lok and Galante began conducting their inspection, the plaintiff made two telephone calls to women named Renee and Linda. She told them both that the inspectors were at her facility pursuing an overcapacity complaint and advised them to implement a telephone chain to alert other providers. Shortly thereafter, a woman identifying herself as Linda Simpson[2] arrived at the facility to pick up one of the remaining eight children. She explained that she was that child's regular day care provider and that she had just returned from vacation.

The inspectors requested that the plaintiff provide them with enrollment records for the children in her care. The plaintiff complied, and the inspectors viewed the records, which they found to be incomplete. The plaintiff and Lok left the basement to inspect the upper floor of the residence while Galante and Courtney stayed in the basement with the remaining seven children. Galante continued to review the records and to inspect the basement area.

No violations were identified in the other parts of the residence, and the plaintiff and Lok returned to the basement. The inspectors asked her to produce the records they found lacking, and informed her that she was being cited for overcapacity and incomplete records. The plaintiff began to search for the records. As she searched, Galante noticed a calendar on the wall, on which were inscribed names of children and instructors on the various days. Galante copied some of the information from the calendar to her notepad. That action concerned the plaintiff, who believed that Galante was acting outside of her authority and violating the plaintiff's and the children's civil rights

---

[2] The department later determined that this name was false.

because she considered the information confidential. The plaintiff tried to see what Galante had written down, but Galante would not allow it.

The inspectors thereafter informed the plaintiff that the visit was over and requested that she sign a complaint investigation form. They apprised her that she would be provided with copies of some of the paperwork generated by the visit and could request anything she required further pursuant to the Freedom of Information Act.[3] The plaintiff, believing that she was receiving unfair and illegal treatment, called the police. She told the inspectors that they were to stay until the police arrived, then latched the door through which the inspectors had entered and stood in front of it. The inspectors remained at the plaintiff's facility until a police officer arrived some ten to fifteen minutes later.

Newtown police officer Steve Ketchum arrived to find a "great deal of commotion" in the basement. As he tried to ascertain what had occurred, the plaintiff moved between him and the inspectors, speaking in a loud voice and gesturing at Galante and Lok. Ketchum moved the plaintiff aside and spoke with her for some time. He then interviewed Galante and Lok outside, speaking with each of them individually. Ketchum then consulted with his supervisor and requested additional assistance. When another officer arrived, the two entered the facility and informed the plaintiff that she was being arrested for disorderly conduct. After arrangements were made for someone else to supervise the children, the plaintiff was escorted outside, handcuffed and brought to the police station.

On August 14, 1998, the department issued a summary suspension of the plaintiff's family day care license. The department cited the plaintiff's violations of the following sections of the Regulations of Connecticut

---

[3] See General Statutes (Rev. to 1997) § 1-18a et seq., now § 1-200 et seq.

State Agencies as the basis of the suspension: §§ 19a-87b-6 (b) (health); 19a-87b-6 (e) (personal qualities); 19a-87b-7 (e) (household environment); 19a-87b-10 (a) (capacity); 19a-87b-10 (b) (1) (child enrollment form); 19a-87b-10 (b) (2) (child health record); 19a-87b-10 (b) (3) (written permission from the parent); 19a-87b-10 (h) (3) (immediate attention); and 19a-87b-13 (c) (access to day care records). Those violations all stemmed from the August 12, 1998 inspection. As a result of the summary suspension, the plaintiff was required immediately to cease operation of her family day care facility. On August 15, 1998, the plaintiff requested a formal hearing to contest the suspension. On August 28, 1998, her attorney also requested a hearing on the plaintiff's behalf, asking that it be scheduled as soon as possible.

On September 2, 1998, before that hearing was held, the department informed the plaintiff that her license was being permanently revoked. In addition to outlining more fully the regulatory violations found on August 12, 1998, the department cited prior violations as further bases for the revocation. Specifically, it noted that on March 9, 1998, the plaintiff had refused inspectors access to her entire residence and failed to provide complete records, and that on March 13, 1998, the plaintiff had exceeded enrollment of children under age two while lacking a department approved assistant and failed to provide complete records. The department informed the plaintiff that it considered her to be in substantial noncompliance with Regulations of Connecticut State Agencies §§ 19a-87b-5 (e) (infant and toddler restriction); 19a-87b-6 (b) (health); 19a-87b-6 (e) (personal qualities); 19a-87b-7 (e) (household environment); 19a-87b-10 (a) (registered capacity and maintaining compliance with the regulations); 19a-87b-10 (b) (1) (enrollment form); 19a-87b-10 (b) (2) (general health record); 19a-87b-10 (b) (3) (written permission from the parent); 19a-87b-10 (h) (3) (immediate attention);

19a-87b-13 (b) (inspection of facility); and 19a-87b-13 (c) (inspection of records), and that such noncompliance was a sufficient basis for the revocation of her license.

The plaintiff requested a hearing on the proposed revocation and requested further that it be held simultaneously with the hearing on the summary suspension. On September 29, 1998, the department held a combined hearing on the summary suspension and the license revocation. The plaintiff attended the hearing and was represented by counsel. Ketchum, inspectors Lok and Galante, the plaintiff, the plaintiff's three daughters, another inspector and several parents testified, and the parties submitted much documentary evidence.

The department hearing officer found that on August 12, 1998, during the inspection by Galante and Lok, the plaintiff ignored the children in her care, became increasingly angry and agitated, and created a dangerous situation. She found that several of the children in the plaintiff's care were upset or crying during the inspection, and that the plaintiff ignored them and generally failed to attend properly to their needs. The hearing officer found that the plaintiff had displayed poor judgment in a stressful situation and turned a routine investigation into an emergency event. She found not credible the plaintiff's testimony that she was frustrated but not angry, that the children were well attended, that the inspectors had overlooked records that were there and that not all of the children present on August 12, 1998, were day care children. The hearing officer noted the prior violations of March 9, 1998, and March 13, 1998, and concluded that the department had established by a preponderance of the evidence that the plaintiff had violated several regulations, which was sufficient to revoke her license.[4]

---

[4] The hearing officer found that the plaintiff had violated Regs., Conn. State Agencies §§ 19a-87b-5 (d) (1) (A) (terms of registration); 19a-87b-5 (e) (infant and toddler restriction); 19a-87b-6 (b) (health); 19a-87b-6 (e) (per-

Thereafter, pursuant to General Statutes § 4-183,[5] the plaintiff appealed from the department's decision to the Superior Court. The court found that the hearing officer's decision was supported by substantial evidence and affirmed the decision. The court considered that the department's revocation action appeared to be based largely on technical and bookkeeping practices, but that regardless of the plaintiff's exemplary fifteen year record as a "competent, conscientious and caring day care provider" who never "created a danger to children in her care or fostered an unsafe or dangerous environment," the substantial evidence standard was satisfied. This appeal followed. Additional facts will be provided as necessary.

We begin by emphasizing that our review of the court's judgment upholding the department's decision is narrow. "We review the issues raised by the plaintiff in accordance with the limited scope of judicial review afforded by the [Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq.] *Perkins* v. *Freedom of Information Commission*, 228 Conn. 158, 164, 635 A.2d 783 (1993); *Buckley* v. *Muzio*, 200 Conn. 1, 3, 509 A.2d 489 (1986). 'Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable.' . . . *Dufraine* v. *Commission on Human Rights & Opportunities*, 236 Conn. 250, 259,

---

sonal qualities); 19a-87b-7 (e) (household environment); 19a-87b-10 (a) (capacity); 19a-87b-10 (b) (1) (enrollment form); 19a-87b-10 (b) (2) (general health record); 19a-87b-10 (b) (3) (written permission from the parent); 19a-87b-10 (h) (3) (immediate attention); 19a-87b-13 (b) (inspection of facility); and 19a-87b-13 (c) (inspection of records).

[5] General Statutes § 4-183 provides in relevant part: "Appeal to Superior Court. (a) A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section. . . ."

673 A.2d 101 (1996); *Schallenkamp* v. *DelPonte*, 229 Conn. 31, 40, 639 A.2d 1018 (1994). [Constrained by a narrow scope of review] [n]either this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. *Griffin Hospital* v. *Commission on Hospitals & Health Care*, 200 Conn. 489, 496, 512 A.2d 199, appeal dismissed, 479 U.S. 1023, 107 S. Ct. 781, 93 L. Ed. 2d 819 (1986); *Connecticut Natural Gas Corp.* v. *Public Utilities Control Authority*, 183 Conn. 128, 134, 439 A.2d 282 (1981). Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion. *Perkins* v. *Freedom of Information Commission*, supra, 164; *New Haven* v. *Freedom of Information Commission*, 205 Conn. 767, 773, 535 A.2d 1297 (1988)." *Dolgner* v. *Alander*, 237 Conn. 272, 280–81, 676 A.2d 865 (1996).

"The substantial evidence rule governs judicial review of administrative fact-finding under the UAPA. General Statutes § 4-183 (j) (5) and (6).[6] An administrative finding is supported by substantial evidence if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . *Connecticut Building Wrecking Co.* v. *Carothers*, 218 Conn. 580, 593, 590 A.2d 447 (1991); *Connecticut Light &*

---

[6] General Statutes § 4-183 (j) provides in relevant part: "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. If the court finds such prejudice, it shall sustain the appeal and, if appropriate, may render a judgment under subsection (k) of this section or remand the case for further proceedings. For purposes of this section, a remand is a final judgment."

*Power Co.* v. *Dept. of Public Utility Control,* 219 Conn. 51, 57, 591 A.2d 1231 (1991). The substantial evidence rule 'imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and . . . provide[s] a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action. . . . The United States Supreme Court, in defining substantial evidence in the directed verdict formulation, has said that it is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." (Internal quotation marks omitted.) *Dolgner* v. *Alander,* supra, 237 Conn. 281. With that standard in mind, we proceed to review the plaintiff's claims.

I

The plaintiff first claims that the court improperly affirmed the decision of the department revoking her family day care license because the department's factual findings were neither supported by substantial evidence nor were its conclusions legally correct.[7] We are not persuaded.

---

[7] At the combined hearing on the summary suspension and proposed revocation of her license, and on appeal, the plaintiff argued that the department's discretion to summarily suspend her license is narrower than its discretion to revoke the license and, therefore, the hearing officer was bound to consider the evidence pursuant to the more narrow standard. Specifically, the plaintiff claims that the hearing officer was limited to considering only whether the events of August 12, 1998, endangered the children's health, safety or welfare. We disagree.

It is true that pursuant to subsection (c) of General Statutes § 4-182, which governs matters involving licenses, *summary suspension* of a license is authorized "[i]f the agency finds that public health, safety or welfare imperatively requires emergency action . . . ." Pursuant to General Statutes (Rev. to 1997) § 19a-87e (a) and the regulations promulgated thereunder, however, "[t]he Commissioner of Public Health shall have the discretion to refuse to license . . . a person to own, conduct, operate or maintain a family day care home . . . *or to suspend or revoke the license* . . . if the person who

Our Supreme Court has found the substantial evidence standard unsatisfied where a hearing officer revoked a family day care license on the basis of evidence that consisted only of "conclusory and general statements," and where "[t]he evidence presented at the hearings failed to disclose the factual particulars regarding inappropriate conduct that had occurred at the plaintiff's family day care home, the dates on which inappropriate conduct occurred, the frequency of inappropriate conduct or any other details concerning the plaintiff's alleged violations . . . ." Id., 282. Further, because various reports containing more detailed information were not introduced into evidence at the hearing, the hearing officer in *Dolgner* "was not provided with an opportunity to assess and to weigh independently and adequately the accuracy and the reliability of the evidence presented." Id.

That was not the case at the plaintiff's hearing. Our review of the record discloses that each of the hearing officer's factual findings had a basis therein. The hearing officer heard consistent testimony from Galante,

owns, conducts, maintains or operates the home . . . *either* fails to substantially comply with the regulations . . . *or* conducts, operates or maintains the home in a manner which endangers the health, safety and welfare of the children receiving child day care services. . . ." (Emphasis added.)

Nothing in the statutory scheme governing family day care requires that a license first be suspended before it is revoked. The plaintiff requested that both her summary suspension and the proposed revocation be the subject of the same hearing. Pursuant to § 19a-87e, revocation is an authorized response to a provider's substantial noncompliance with the regulations governing family day care facilities. Thus, the plaintiff's prior refusal to fully admit inspectors and her recordkeeping violations properly were subjects of the hearing.

In addressing the plaintiff's claims, we will employ the standard of § 19a-87e and will limit the discussion to whether the department properly revoked her license because the issue of whether it properly summarily suspended her license is moot. "An issue is moot when the court can no longer grant any practical relief." *Twichell* v. *Guite*, 53 Conn. App. 42, 52, 728 A.2d 1121 (1999). Because the plaintiff's license already has been revoked, a finding that the summary suspension was improper would afford her no practical relief.

Lok and Ketchum regarding the events of August 12, 1998. Copies of the inspectors' statements and Ketchum's police report also were admitted into evidence, as was a six page descriptive narrative prepared by the inspectors for the department subsequent to the August 12, 1998 visit. Another inspector, Geneva Shields, testified as to past visits with the plaintiff when other violations were found. Detailed and dated department records pertaining to the plaintiff were admitted into evidence at the hearing. Those included a copy of the intake report for the anonymous complaint that prompted the August 12, 1998 visit, the completed complaint investigation form for that visit, a home visit compliance form noting that on March 9, 1998, the plaintiff had denied Shields access to her entire facility and failed to provide enrollment information, and Shields' narrative describing the events of that day. Because of the extensive documentation and testimony supporting the hearing officer's factual findings, we cannot say that the substantial evidence standard was unsatisfied.

The plaintiff and her daughters also testified as to the inspection of August 12, 1998, and relayed a version of events markedly different from that of the investigators. Several of the parents of children that the plaintiff had cared for testified and spoke favorably of the plaintiff's skills as a day care provider and of her positive personal qualities, though each stated that they had not witnessed firsthand the events in question. The plaintiff also provided an eight page document entitled "Answer to Summary Suspension Allegations," in which she addressed the department's charges against her. She later submitted a twenty-three page document entitled "Rebuttal to Proposed Memorandum of Decision," in which she addressed each of the hearing officer's findings of fact.

It is clear from the hearing officer's decision that she found the testimony and evidence presented by the

department credible and that presented by the plaintiff not credible. We reiterate here that under the limited and deferential review afforded by the substantial evidence standard, which is embodied in our legislation and case law, neither the trial court nor this court may retry the case, substitute its judgment for that of the hearing officer or engage in independent evaluation of the weight of the evidence or questions of fact. "The credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency, and, if there is evidence . . . which reasonably supports the decision of the [hearing officer], we cannot disturb the conclusion reached . . . ." (Internal quotation marks omitted.) *Salmon* v. *Dept. of Public Health & Addiction Services*, 58 Conn. App. 642, 661, 754 A.2d 828, cert. granted on other grounds, 254 Conn. 926, 761 A.2d 754 (2000).

The plaintiff also argues that the hearing officer's decision was legally improper. After a review of the case law concerning the revocation of day care licenses, we cannot agree. Regulations of Connecticut State Agencies § 19a-87b-13 (b) requires that a "[family day care] provider . . . shall allow Department staff to inspect, upon request, any part of the family day care facility during the performance of a home visit," and that "failure of the provider to allow a complete inspection may be grounds for the initiation of registration suspension or revocation proceedings."

In *Kagan* v. *Alander*, 42 Conn. App. 92, 677 A.2d 1391, cert. denied, 239 Conn. 913, 682 A.2d 1001 (1996), we adopted the trial court's decision in *Kagan* v. *Alander*, 44 Conn. Sup. 223, 680 A.2d 1015 (1994), affirming the revocation of the plaintiff's family day care license after she had refused to allow an investigator entry to inspect her facility during an unannounced visit. That refusal was the sole basis for the revocation of the plaintiff's license. The trial court in *Kagan* noted that the "regula-

tions [governing family day care facilities] . . . require
. . . acquiescence in the state inspection program,
including . . . consent to unannounced spot inspec-
tions." Id., 227–28; see also *Brandon* v. *Dept. of Human
Resources*, Superior Court, judicial district of Hartford-
New Britain at Hartford, Docket No. 920519272 (March
26, 1993) (8 C.S.C.R. 422), aff'd, 37 Conn. App. 903, 654
A.2d 389 (1995); *Harris* v. *Alander*, Superior Court,
judicial district of Middlesex, Docket No. CV 92-0067537
(October 22, 1993).

The record in this case supports the hearing officer's
finding that on March 9, 1998, the plaintiff denied an
inspector access to part of her facility. Because the
regulations and the case law establish that this alone
is a ground for revocation of a provider's license, we
hold that the hearing officer's decision to revoke the
plaintiff's license was not unreasonable, arbitrary, ille-
gal or in abuse of her discretion.

The plaintiff points out that the department, in revok-
ing her license, made much of the fact that an infant
was crying and that some of the other children became
upset during the August 12, 1998 inspection, but that
there was no evidence presented at the hearing that
any child ever suffered any harm under her care. We
note in that regard that the inspectors' visit necessarily
took the plaintiff's attention away from her child care
responsibilities and easily could explain why the chil-
dren became unsettled. Our review of the several par-
ents' testimony at the hearing disclosed nothing but
laudatory comments regarding the care their children
received at the plaintiff's facility. Nonetheless, we reit-
erate that "[o]ur ultimate duty [on review of an adminis-
trative agency decision] is to determine, in view of all
of the evidence, whether the agency, in issuing its order,
acted unreasonably, arbitrarily, illegally or in abuse of
its discretion." *Dolgner* v. *Alander*, supra, 237 Conn.
280. Because the department's revocation of the plain-

tiff's license was premised on her earlier refusal to admit an inspector to her entire facility, which is an established ground for revocation, as well as on the events of August 12, 1998, we must conclude that the department acted within its discretion.

## II

The plaintiff next claims that the court misunderstood the standard of review of the department's decision to revoke her license. She claims that it is clear that if the court had understood its power properly, it would have overturned the department's decision. We disagree.

The court in articulating its standard of review of the department's action noted the substantial evidence rule, citing to several cases in which that rule is outlined. It correctly deferred to the department's factual findings pursuant to that rule. It is true that the court did not quote the portion of the standard requiring it to determine whether the department's revocation of the plaintiff's license was "unreasonabl[e], arbitrar[y], [illegal] or in abuse of its discretion." Id. Nonetheless, the court's understanding of that standard is implicit in its upholding of the department's action after concluding that the plaintiff had violated the regulations.

Our review of the court's memorandum of decision convinces us that the court used the proper standard of review and correctly applied it to the hearing officer's decision.

## III

The plaintiff claims finally that her rights to due process of law and natural justice were violated by the procedures used by the department in the revocation of her family day care license and that the warrantless search of her facility violated the fourth amendment to the United States constitution. We disagree.

The plaintiff argues, in essence, that the department hearing officer was biased in favor of the department. She claims impropriety in the fact that the hearing officer is a department employee and urges that the hearing officer's lack of neutrality is demonstrated by her findings of fact, which were predominantly unfavorable to the plaintiff.

It is well established that "[i]t is not violative of due process for the same authority which initiated the subject of the hearing to listen to and determine its outcome as long as that authority gives the person appearing before it a fair, open and impartial hearing. . . . An administrative agency can be the investigator and adjudicator of the same matter without violating due process." (Citations omitted; internal quotation marks omitted.) *New England Rehabilitation Hospital of Hartford, Inc.* v. *Commission on Hospitals & Health Care*, 226 Conn. 105, 151–52, 627 A.2d 1257 (1993). The fact that the investigators and the hearing officer both are employees of the department, standing alone, does not render the proceedings offensive to due process.

"The applicable due process standards for disqualification of administrative adjudicators [due to bias] do not rise to the heights of those prescribed for judicial disqualification. . . . The mere appearance of bias that might disqualify a judge will not disqualify an arbitrator. . . . Moreover, there is a presumption that administrative [officers] acting in an adjudicative capacity are not biased. . . . To overcome the presumption, the plaintiff . . . must demonstrate actual bias, rather than mere potential bias, of the [hearing officer] challenged, unless the circumstances indicate a probability of such bias too high to be constitutionally tolerable. . . . The plaintiff has the burden of establishing a disqualifying interest." (Citations omitted; internal quotation marks omitted.) *Clisham* v. *Board of Police Commissioners*, 223 Conn. 354, 362, 613 A.2d 254 (1992).

To prove bias, the plaintiff "must make a showing that the [hearing officer] ha[d] prejudged adjudicative facts that [were] in dispute. . . . A tribunal is not impartial if it is biased with respect to the factual issues to be decided at the hearing. . . . The test for disqualification has been succinctly stated as being whether a disinterested observer may conclude that [the hearing officer] has in some measure adjudged the facts as well as the law of a particular case in advance of hearing it." (Citations omitted; internal quotation marks omitted.) Id.

Here, the plaintiff does not point to any indication of actual bias on the part of the hearing officer other than that she found facts that supported a revocation of the plaintiff's license. Instead, the plaintiff attacks the propriety of the structure of the department generally, arguing that the inherent potential for bias is constitutionally unacceptable. Because, as previously noted, the combination of investigatory and adjudicative functions within the same agency does not itself offend due process, the plaintiff has not satisfied her burden of showing that she suffered unconstitutional bias.

The plaintiff also argues that the manner in which her license was revoked was contrary to concepts of natural justice. In explaining the informal nature of hearings before an administrative body, our Supreme Court has stated that "[t]he only requirement is that the conduct of the hearing shall not violate the fundamentals of natural justice. That is, there must be due notice of the hearing, and at the hearing no one may be deprived of the right to produce relevant evidence or to cross-examine witnesses produced by his adversary or to be fairly apprised of the facts upon which the board is asked to act." *Parsons* v. *Board of Zoning Appeals*, 140 Conn. 290, 292–93, 99 A.2d 149 (1953), overruled on other grounds, *Ward* v. *Zoning Board of Appeals*, 153 Conn. 141, 146–47, 215 A.2d 104 (1965);

see also *Grimes* v. *Conservation Commission*, 243 Conn. 266, 274, 703 A.2d 101 (1997).

Here, the plaintiff received due notice of her hearing via a letter from the department that outlined extensively the charges against her, including the details of her alleged violations and citations to the regulatory sections it considered that she had violated. At that hearing, she presented the testimony of several witnesses and submitted much documentary evidence. The plaintiff at all times was represented by counsel, who cross-examined the witnesses who testified for the department. Further, she was given full opportunity to respond in writing to the findings of fact embodied in the hearing officer's proposed memorandum of decision. Consequently, the plaintiff's assertion that she was denied due process and natural justice in the proceedings is ill founded.

The plaintiff last claims that the August 12, 1998 inspection was in violation of her fourth amendment rights.[8] We disagree.

"It is well established that a [plaintiff bringing a] challenge to a duly enacted statute on the basis that it is unconstitutional carries a heavy burden. Indeed, constitutional flaws must be proved beyond a reasonable doubt. *State* v. *Floyd*, 217 Conn. 73, 79, 584 A.2d 1157 (1991). Regulations carry the force of statute and are similarly armored against constitutional challenge. *Griffin Hospital* v. *Commission on Hospitals & Health Care*, [supra, 200 Conn. 497]." *Kagan* v. *Alander*, supra, 44 Conn. Sup. 228.

---

[8] The fourth amendment to the United States constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized."

The trial court in *Kagan* approved of the very type of inspection at issue here, rejecting a claim that the requirement of consenting to home inspections as a condition to maintaining a day care license was so coercive that it amounted to a warrantless search. The court noted that "[t]he regulations in question are designed to provide state officials immediate access to inspect private homes that have been licensed as places where other people's children are cared for in the absence of their parents. . . . [T]he tender years of the children, their dependence on the provider, the potential for abuse, and the easy concealment of common dangers found in a private residence provide a rational basis for the requirement of spot inspections. . . . [T]he absence of parental supervision . . . provides strong support for state supervision." (Internal quotation marks omitted.) Id., 229. The court concluded that the regulations served a rational purpose in protecting the public welfare, particularly the welfare of children, and had not been proven unconstitutional beyond a reasonable doubt. Id.[9]

The regulations governing family day care centers mandate that providers consent to regular inspections or face action against their licenses. The plaintiff argues that consent to an inspection "under threat of revocation" of her license cannot be constitutionally legitimate consent. We disagree. The plaintiff's right to pursue her chosen employment is not without limits, but is subject to the state's exercise of its police power to protect the health and welfare of the public. See *State* v. *Vachon*, 140 Conn. 478, 101 A.2d 509 (1953). "[A]mong all the objects sought to be secured by governmental laws,

[9] Contrary to the plaintiff's assertions, authorization for inspections pursuant to the regulations is not limited to emergency situations, nor is the state's interest limited to addressing imminent threats to day care children. See Regs., Conn. State Agencies §§ 19a-87b-13, 19a-87b-14. As such, the plaintiff's attempt to cast her challenge to the regulations authorizing inspections as an "as applied" challenge rather than as a facial attack is misplaced.

none is more important [than the protection of public health]; and an imperative obligation rests on the state, through its proper instrumentalities or agencies, to take all necessary steps to promote this object." 39 Am. Jur. 2d, Health § 1 (1999).

Precedent indicates that in the interest of protecting the public health, requiring consent to certain searches is an appropriate condition under similar circumstances. See *United States* v. *Davis*, 482 F.2d 893, 913 (9th Cir. 1973) (consent to airport search valid condition for engaging in air travel); *State* v. *Taylor*, 12 Conn. App. 427, 433, 531 A.2d 157 (1987) (consent to Breathalyzer test valid condition for maintaining driver's license). We conclude, therefore, that the plaintiff has not sustained her heavy burden of proving that the regulations allowing for inspections of family day care centers are unconstitutional beyond a reasonable doubt.

The judgment is affirmed.

In this opinion the other judges concurred.