[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The instant action concerns the appeal of decision of the Planing and Zoning Commission of the Town of Westport (hereinafter the "PZ) concerning the approval of:
1) A zoning regulation amendment; and
2) A special permit and site plan application filed by Hall-Brooke Foundation, Inc.
The plaintiff-appellant, Martin Rosenfeld (hereinafter "Plaintiff') within one year prior to the events that are the subject of the instant action acquired property in the Town of Westport that abuts the property occupied by the defendant-applicant, Hall Brooke Hospital, Incorporated (hereinafter the "Applicant").
The Applicant is a non-profit corporation that operates a psychiatric hospital and associated school on Long Lots Road in the Town of Westport. The psychiatric hospital was established in its present location in approximately 1898. With the exception of the school on the premises all major buildings were constructed prior to 1910.
 Aggrievement
In order for this Court to proceed with the issues presented by the parties it must first make the threshold determination as to whether the appellant is aggrieved.
 "`The question of aggrievement is essentially one of standing.' Beckish v. Manafort, 175 Conn. 415, 419, 399 A.2d 1274 (1978). The issue of standing invokes the trial court's subject matter jurisdiction. D.S. Associates v. Planning Zoning Commission, 27 Conn. App. 508, 511, 607 A.2d 455 (1992). The issue CT Page 11427 cannot be waived. `Proof of aggrievement is essential to a trial court's jurisdiction of a zoning appeal.'" R R Pool Home, Inc. v. Zoning Board of Appeals, 43 Conn. App. 563, 568, 684 A.2d 1207
(1996). "Standing is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented." (Internal quotation marks omitted.) DiBonaventura v. Zoning Board of Appeals, 24 Conn. App. 369, 373-74, 588 A.2d 244, cert. denied, 219 Conn. 903, 593 A.2d 129
(1991).
 "[T]he fundamental test for determining aggrievement encompasses a wellsettled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision. . . . Cannavo Enterprises, Inc. v. Burns, 194 Conn. 43, 47, 478 A.2d 601 (1984); Bakelaar v. West Haven, [193 Conn. 59, 65, 475 A.2d 283
(1984)]. Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected. O'Leary v. McGuinness, 140 Conn. 80, 83, 98 A.2d 660 (1953). Hall v. Planning Commission, 181 Conn. 442, 445, 435 A.2d 975 (1980). . . . [Connecticut State Medical Society v. Board of Examiners in Podiatry, 203 Conn. 295, 299-300, 524 A.2d 636 (1987)]." Northeast Parking, Inc. v. Planning Zoning Commission, 47 Conn. App. 284, 288, 703 A.2d 797 (1997), cert. denied, 243 Conn. 969, 707 A.2d 1269 (1998). "[I]n order to retain standing as an aggrieved person, a party must have and must maintain a specific; personal and legal interest in the subject matter of the appeal throughout the course CT Page 11428 of the appeal. . . . It is not enough for a party to have an interest in the property sufficient to establish aggrievement only at the time of the application to the commission." (Citations omitted.) Primerica v. Planning Zoning Commission, 211 Conn. 85, 94, 558 A.2d 646 (1989).
Bethlehem XN. Fellowship v. P. Z. Comm., 58 Conn. App. 441, 443
(2000).
The parties herein have stipulated to facts sufficient for this Court to find that the Plaintiff is indeed aggrieved.
 Facts and Discussion
The Plaintiff in the instant action is an abutting property owner and has made a satisfactory showing to this court he has a specific and personal interest in the matter at hand. His interest was and is directly and adversely affected by the decision of the PZ and the Court finds the Plaintiffs to be aggrieved.
The original proposal of the Applicant was to demolish all buildings existing on the subject site (with the exception of a "school building") and replace them with a single, fifty eight thousand (58,000) square foot building that would combine all the Applicant's services into a single location. Additionally the Applicant desired to construct and operate an Assisted Living Facility (hereinafter an "ALF"). This type of facility had not previous been on the subject premises.
The Applicant presented three proposals to the PZ:
1) Application 99-024.
2) Application 99-025 (zoning amendment #482) (Record Item 3).
3) Application 99-026 (zoning amendment #483).
Application 99-024 is an application by the Applicant for a Special Permit and Site Plan approval for the replacement of existing buildings housing the psychiatric hospital and the construction and operation of an assisted living facility.
Application 99-025 is an application for an amendment to the Westport Zoning Regulations § 32-3.2, to change the phrasing of said section to allow the replacement of a hospital building(s) for an existing CT Page 11429 hospital.
Application 99-026 is an application for an amendment to the Westport Zoning Regulations § 32-15.9 to allow an increase in height of the building for sites in excess of 8 acres, so that no building will exceed a height of 3 stories or 35', whichever is less. The amendment also requires an increase in front, side and rear setbacks for three story buildings.
The statement of Need for and Benefits of Proposed Amendment to Section 32-3.5.1 of the Westport Zoning Regulations provides in pertinent part that:
 The proposed amendment to Section 32-3 is needed to clarify the present regulation which allows hospitals or 40 or more beds to operate within an existing building of 20,000 square feed or more in a residential zone. Such hospital should be permitted to replace an outmoded facility. It does not appear to have been the intent or the regulation to prevent this. Accordingly, the amendment is proposed to make it clear that a hospital located in a residential zone may replace an outdated and inefficient building with a modern, safer and more functional one, thereby enhancing patient care and safety. . .
The proposed language of the aforementioned section reads as follows:
32-3.5 Density
 No side shall exceed a density of 20 beds per acre and no site or building shall accommodate more than 120 beds including staff and resident accommodations and not more than one (1) dwelling unit for a resident manager.
 32-3.5.1 A project of 40 beds or more shall only be permitted either on a site with at least 100 feet of frontage on a public street within a commercial zone within an existing building or buildings (or replacement thereof) containing 20,000 square feet or more of gross interior floor space.[1]
Public hearings were scheduled and heard on Application 99-026. Said CT Page 11430 hearings were had on May 13th, 27th June 10th and June 24th of 1999. On June 10, 1999, the Applicant withdrew, without prejudice, the portion of its special permit application 99-024, concerning the Assisted Living Facility. A letter dated June 11, 1999; from Attorney Mark J. Kurzman confirmed said withdrawal (Record Item 107). The Applicant also withdrew Application 99-026. The aforementioned letter also provided notice to the PZ that the Applicant consented to an extension until June 24, 1999 for the completion of the hearing on the remaining portion of the application.
On August 9, 1999, the PZ passed a resolution approving Application 99-025 (Record Item 17). The PZ went on to consider the modified application.
The Plaintiff asserts that the PZ "abused its discretion:
 . . . when it allowed the withdrawal of a major portion of the application before it, a requested change of use of a large portion of the applicant Hall-Brooke's property to an Assisted Living Facility (ALF), and continued the hearing process limited to an expansion of an existing psychiatric hospital use on the property with requiring new site plans and Special Permit applications.
The gist of the Plaintiff's argument is that the PZ exceeded its authority by acting on the scaled down submission without requiring new site plans and a new special permit application. The Plaintiff specifically states that since the Applicant had already stated that it would be back with a proposal for an Assisted Living Facility, the PZ abused its discretion by granting the scaled down application. In other words, the Applicant may attempt to come back at some date in the future and attempt to get the portion of the Application that it had previously withdrawn and therefore the PZ had a duty to consider the effects of the full blown application, even without it being submitted to the PZ for consideration.
The Plaintiff does not cite any authority to support its position that the PZ could not review a scaled down proposal on its own merit, or that the PZ had a duty to review the application based on the possibility that the Applicant may come back for the rest of the original proposal at some later date. The Applicant, on the other hand, asserts that when, and if; it submits a new application for the ALF, the PZ will have to consider said application on its own merits and that it would be inappropriate to deny the current application because it might apply for CT Page 11431 the approval of the ALF in the future. The Court finds the Applicant's argument to be the most persuasive as to this issue. To find otherwise would be to require a zoning board to take into account every idea concerning a potential future of a property, and to vote for or against such use, despite the fact that no application for such a use is actually before it, or in fact may ever be before it.
The Plaintiff also argues that the Applicant's withdrawal of a portion of its proposal did not happen until June 11, 1999, after three public hearings had already been held on the full blown proposal.[2] However, the public received notice of the original proposal for the replacement hospital facility and the ALF. Members of the public had the opportunity at public meetings to comment on one component or the other, or both proposals. Additionally there was a public hearing held on June 24, 1999, which was thirteen (13) days after the Applicant withdrew its proposal for the ALF. The Plaintiff does not argue that he or the general public did not receive proper notice of the modified proposal or were precluded from an opportunity to be heard on the matter. The record clearly indicates that the general public was given adequate notice and opportunity to comment on both the original proposal and the scaled down proposal.
As to the issue that the PZ did not require more information of 1999 traffic requested by its own traffic expert, Frederick P. Clark and Associates (Record Ex. #61 and PZ Regulations Sec. 44-2.5(d). Record Item #61 is a letter from Fredrick P. Clark Associates, Inc., dated May 4, 1999. It provides in pertinent part that:
 The Applicant conducted manual traffic surveys at the two access drives on Long Lots Road and three other intersections in January 1999. These surveys were conducted during the morning and afternoon peak periods and used as a basis for further analysis. The results of these surveys are included in Appendix F in table form, however, it is recommended that this information be provided in graphic for, similar to the format used for 2000 external traffic (background traffic volumes) volumes for each peak hour (figures 2 and 3).
The Applicant asserts that it had provided the additional information and the record indicates that additional material was indeed submitted to the PZ (Record Ex. #84). Record Item #84 us a letter from Fuss O'Neill, Inc. Consulting Engineers, dated May 27, 1999. This letter provides in pertinent part that: CT Page 11432
 This submission includes the additional information requested to describe existing conditions traffic volumes and capacity analyses. Our traffic study had provided the "external traffic volumes, defined as traffic at a time just prior to the opening of the proposed development, with the development's site generated traffic. External traffic analysis versus combined conditions capacity analysis is the comparison which describes the traffic impact of the development.
The Record indicates that the PZ received the additional information for consideration.
The Plaintiff asserts that the PZ failed to set reasonable parking requirements. That "(only 99 spaces were required by the Commission) for the school, hospital and other uses on the site" (see plaintiff's brief; dated August 23, 2000, at page 3). However, (Record Ex. 64A) indicates that the PZ did consider the parking requirements for the entire facility. This item indicates in pertinent part that:
 Parking Computations: There are 60 beds for the hospital. The standard for hospital parking is 1 space for each three beds, or 20 spaces. However, this is an unrealistic number and Hall-Brooke is proposing 99 spaces for the hospital. This is based upon their calculation of their outpatient services at the usual medical rate (1 space to each 165 square feet) and the office areas at the office rate (1 space to each 250 square feet).
The number of parking spaces required for the hospital alone was 20 spaces, however 99 spaces were proposed, i.e. 79 more than were required for the hospital itself. See also Record item #57 at index tab #11.
The Plaintiff asserts that the PZ failed to require revised site plans in conformity with its own regulations. However the record indicates that a revised site plan was submitted by the Applicant. See the attachment to letter from Mark J. Kurzman to Ms. Carrie Makover, dated June 11, 1999 (Record Ex. 107).
The plaintiff asserts that the Commission erred factually in calculating the allowable expansion under the amendment to the regulations it passed. The amended regulation provides in pertinent part CT Page 11433 that:
 An existing hospital or other medical institution may replace its buildings as long as ". . . (c) The replacement floor area does not cause an increase in excess of 15% of the existing gross interior floor area of the buildings used for hospital purposes on the site as of September 1, 1999" (Record Item #16A and #17).
The Plaintiff's argument as to this issue is twofold. One issue raised by the Plaintiff is the whether or not the "school" was a building and some of the other buildings that were being replaced were used for hospital purposes as stated in the amendment. The second is that the square footage was improperly calculated and that said calculation was wrongly accepted by the PZ.
As to the issue of whether the school building was being used for hospital purposes. The facility that is the subject of this action is a psychiatric facility that among other things provides educational services for children who are emotionally disturbed (Record Ex. 123A).
 "A local board or commission is in the most advantageous position to interpret its own regulations and apply them to the situations before it." New London v. Zoning Board of Appeals, 29 Conn. App. 402, 405, 615 A.2d 1054, cert. granted, 224 Conn. 921, 618 A.2d 528 (1992) (appeal withdrawn March 18, 1993)."
Doyen v. Zoning Board of Appeals, 67 Conn. App. 597, 603 (2002).
The PZ's interpretation of its regulations so that the "school" was being used for a hospital purpose is reasonable under the circumstances and this court will not substitute its judgment for that of the administrative body.
As to the issue of whether some of the other buildings were being used for hospital purposes, the record indicates that evidence was presented to the PZ that the buildings were being used for hospital purposes. For example, the PZ directly addressed this issue with the Applicant's representative at the June 24, 1999 meeting.
 (Unidentified Board Member):
CT Page 11434
 I understand your position completely. I have one more question in regards to this and in that 51,796 does that also include the maintenance and caretaker's residence in the rear of the property and not in fact something that is part of the hospital facility?
(Kurzman):
The 51 number is all the buildings that we have . . .
(Unidentified Board Member):
 So the answer is yes, it does include something that is not hospital related? It is not part of the hospital facility?
(Kurzman):
 No, I disagree. All of the buildings that are coming down were part of the hospital facility. Had all been used over time for various hospital related activities.
(Minutes of the Westport PZ Commission 6/24/1999, at Page 24.)
The issue of the use of the buildings on the subject premises was clearly brought to the attention of the PZ and addressed by the PZ. The board had the time and opportunity to make queries into this issue and had in fact done so. As to the credibility of the witnesses and the determination of factual issues, that was within the province of the PZ to determine.
 "The credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency, and, if there is evidence . . . which reasonably supports the decision of the [hearing officer], we cannot disturb the conclusion reached. . . ." (Internal quotation marks omitted.) Salmon v. Dept. of Public Health Addiction Services, 58 Conn. App. 642, 661, 754 A.2d 828, cert. granted on other grounds, 254 Conn. 926, 761 A.2d 754
(2000).
 Elf v. Dept. of Public Health, 66 Conn. App. 410, 422 (2001). CT Page 11435
There is reasonable evidence in the record that supports the conclusion of the PZ that the buildings on the premises were used for hospital purposes as required by the regulation. Therefore this Court will not disturb the its conclusion.
As to the issue of the calculation of square footage, there is evidence in the record that the PZ received evidence that:
 The existing hospital buildings total 63,316 gross square feet. The proposed replacement building totals 58,000 gross square feet. The existing school building is 11,520 gross square feet. Therefore the grand total will be 69,520 square feet which in an increase of 6,204 square feet.
(Record Ex 64A, at page 13).
As was previously stated herein:
 "The credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency, and, if there is evidence . . . which reasonably supports the decision of the [hearing officer], we cannot disturb the conclusion reached. . . ."
 Elf v. Dept. of Public Health, Id.
The Board's finding that the replacement hospital is within the fifteen-percent limit is reasonable in light of the evidence in the record.
For the reasons stated herein, the appeal is dismissed.
Richard A. Robinson, J September 6, 2002.